# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

RHOANNA LYN BROWN-BORGES,

    Plaintiff,

  vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:16-CV-2119-CMK

MEMORANDUM OPINION AND ORDER

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 19) and defendant's cross-motion for summary judgment (Doc. 23).

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on August 29, 2012. In the application, plaintiff claims that disability began on October 29, 2008. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 10, 2014, before Administrative Law Judge ("ALJ") L. Kalei Fong. In a December 19, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine with radiculopathy;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, rule 202.21, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

On April 29, 2016, the Appeals Council granted review. In a July 1, 2016, decision, the Appeals Council adopted the ALJ's disability decision. In particular, the Appeals Council adopted the ALJ's credibility finding. The Appeals Council, however, did not adopt the ALJ's conclusion that plaintiff's mental impairment of depression and anxiety moderately impact her activities of daily living. In this regard, the Appeals Council stated:

> . . .As the hearing decision properly notes (HD p.5/12), the claimant herself reported that she is independent in all activities of daily living and industrial activities of daily living (Ex. 3F/1). Moreover, the claimant has attributed any difficulties with activities of daily living to side effects from narcotic pain medication taken to relieve her physical pain. The claimant's mental status examinations revealed that she had no intellectual deficits or short-term memory deficits and her judgment and insight were intact. The claimant has only mild limitations regarding maintaining concentration, persistence and pace. Therefore, the evidence in the record indicates that the claimant's mental impairment mildly restricts activities of daily living; presents mild difficulties in maintaining social functioning, results in mild deficiencies in concentration, persistence or pace; and has produced no episodes of deterioration or decompensation in work or work-

2

like settings. The Appeals Council notes that not only did the record not support the decision finding of moderate functional limitations in activities of daily living, the hearing decision did not indicate any residual functional limitations resulting from a moderate limitation in activities of daily living. The mild limitations in all functional areas and the non-severe mental impairments conclusions are also consistent with the conclusions of the state agency medical examiners and the record as a whole.

The Appeals Council made the following additional relevant findings and conclusions:

1. The claimant has the severe impairment of degenerative disc disease of the lumbar spine with radiculopathy;

2. The claimant has the residual functional capacity to perform light work; and

3. Applying Grid rule 202.21, plaintiff is not disabled.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the Appeals Council erred by applying Grid rule 202.21; (2) the Appeals Council erred by adopting the ALJ's credibility and residual functional capacity assessments without considering the side effects of medication; and (3) the Appeals Council erred by accepting the ALJ's improper assessment of plaintiff's mental impairments as non-severe.

**A.** **Severity of Plaintiff's Mental Impairment**

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[1] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the

---

[1] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

4

impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

With respect to the severity of plaintiff's mental impairment, the ALJ stated:

> The claimant further alleges that her ability to work is impaired due to depression, anxiety. . . . In regards to the mental allegations, treatment records reveal that the claimant did not report having problems with depression to treating sources (Ex. 5F/4). She reported that she was doing well and that medication worked very well (Ex. 5F/5, 13). She told treating sources that Xanax helped with her nerves (Ex. 5F/11). Mental status examinations generally revealed mild findings such as the claimant was fully oriented. Her mood was appropriate/normal. Her affect was normal. Her speech was normal quality, quantity, and rate. There were no intellectual deficits or short-term memory deficits. Her judgment and insight were intact (Ex. 4F; 6F; 7F; 9F). Treating sources noted that the claimant was cognating well (Ex. 6F/32, 37, 41). She denied problems with anxiety, agitation, depression, suicidal ideation, or mood or intellect disturbances (Ex. 4F; 6F).
>
> On January 30, 2013, state agency psychiatrist L. Colsky, M.D., opined that there was no medically determinable mental impairment (Ex. 1A). On September 6, 2013, state agency psychologist Timothy Schumacher, Ph.D., opined that the claimant's mental condition was nonsevere (Ex. 3A). The undersigned gives Dr. Colsky's opinion little weight as the record reveals diagnosis of depression by an acceptable medical source. However, great weight is given to Dr. Schumacher's opinion as it is consistent with the claimant's discussed clinical history showing that it is not as severe as alleged.

In finding plaintiff's mental impairment to be not severe, the ALJ considered plaintiff's abilities in the areas of activities of: (1) daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation.

Plaintiff argues that the Appeals Council and ALJ erred by failing to make any findings regarding plaintiff's diagnosed "adjustment disorder with mixed anxiety and depressed mood" or the side-effects of medication. As to the latter, which is not a mental impairment, the court does not agree. As to adjustment disorder, while plaintiff notes various instances where treating sources have diagnosed this impairment, plaintiff has not pointed to any evidence of record beyond a diagnosis. Specifically, plaintiff does not cite any evidence showing that her

5

adjustment disorder has more than a minimal effect on her ability to function. As the ALJ noted, mental status examinations were unremarkable, plaintiff denied any problems with anxiety, agitation, depression, suicidal ideation, or mood or intellect disturbances, and Dr. Schumacher opined that plaintiff does not have any severe mental impairment.

### B. <u>Credibility</u>

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See <u>id.</u> Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See <u>id.</u>; see also <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "... mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily

activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> The claimant alleges her ability to work is impaired due to her condition causing chronic pain, weakness, numbness, disturbed sleep, fatigue, muscle spasms, and weakness. She underwent surgery in 2008 and had some relief for five to six months after the surgery. However, the pain returned. She has pain along the left side of her body from her lower back down into her left leg. She has numbness and tingling in the distribution of the pain radiation. Currently she is taking Methadone and Percocet. She stopped taking Soma, Norco, and morphine in 2011. She also took oxycodone but stopped. Since she has reduced her pain medication, her pain level is worse. Her husband has to do all the household chores. During the hearing, the claimant alleged her pain level was a six or seven on a scale of one to 10. She alleged during the hearing that she shifted back and forth while seated due to difficulty sitting. Conservative treatment such as epidural steroid injections and trigger point injections were ineffective. She further alleges that medication causes side effects such as memory loss, stutters, and weakness.

The ALJ found these allegations not credible for the following reasons:

> First, these allegations are inconsistent with the claimant's discussed clinical history showing that the claimant's condition is generally controlled. The claimant reported that she had been doing well to treating sources (Ex. 5F/12, 13). She told treating sources that acupuncture was helping with leg symptoms (Ex. 6F/45, 49). She reported that her sleep had improved (Ex. 6F/49, 52, 55, 58). She told treating sources that Robaxin worked and that her symptoms were alleviated by medication (Ex. 6F/86; 7F/1). She told the consultative physician that her pain is relieved by taking methadone, icing, and rest (Ex. 10F/9). Records reveal that the claimant denied forgetfulness, confusion, or other neurological symptoms (Ex. 4F). She reported no adverse medication reaction or side effects (Ex. 6F/1).

///

///

///

8

The ALJ then documented the record of findings on physical examinations, which were "generally mild." The ALJ added:

> Second, these allegations are inconsistent with medical opinions that show that the claimant is functional in spite of her condition. . . .

The ALJ then discussed the various medical opinions, specifically the accepted opinions of the agency consultative reviewing physicians, Drs. Lockie, <u>see</u> CAR at Exhibits 1F and 2F, Mauro, <u>see</u> <u>id.</u> at Exhibit 1A, and Nordlicht, <u>see</u> <u>id.</u> at Exhibit 3A, as well as the consultative examining physicians, Drs. Littlepage, <u>see</u> <u>id.</u> at Exhibit 3F, and Ali, <u>see</u> <u>id.</u> at Exhibit 10F. These doctors all opined that plaintiff has the capacity to perform activities consistent with light work. Finally, the ALJ stated:

> Accordingly, while the claimant may experience some pain, the weight of the evidence shows that the claimant is able to perform a range of light exertional work. [¶] Thus, the claimant's allegations are not entirely credible.

Plaintiff argues that the ALJ erred by failing to "identify what portions of plaintiff's testimony as to her depression and anxiety were not credible. . . ." As discussed above, the ALJ properly found that plaintiff does not have a severe mental impairment. Therefore, it was not necessary for the ALJ to further consider plaintiff's allegations in this regard. It follows that plaintiff's allegations of disabling mental impairments were discounted by the ALJ because plaintiff does not have any severe mental impairment. Plaintiff also argues that the ALJ erred by failing to consider the side effects of medication. As the ALJ noted, however, plaintiff never reported any adverse side effects of medication, and plaintiff fails to identify any portions of the record which indicate otherwise.[2]

---

[2] Plaintiff cites CAR 490 as evidence that "the ALJ knew the side effects were so severe that she needed detoxification." The cited document is a portion of a June 4, 2013, report prepared by Shishir A. Dhruva, M.D. This report, however, indicates that Dr. Dhruva recommended detoxification, not that it ever occurred. Morever, the doctor recommended detoxification from narcotic pain medications because they were not having any primary effect on plaintiff's pain and plaintiff had become addicted, not because the medications produced undesirable side effects.

## C. Residual Functional Capacity

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[3] Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure. See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

Plaintiff once again argues that the ALJ erred by failing to consider either her mental impairments or the side effects of her pain medications. Again, the court finds no error because plaintiff's mental impairment is non-severe and because plaintiff has not complained of the side effects of medication or produced evidence that the side effects of medication adversely affect her ability to work.

///
///
///
///

---

[3] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

D. **Application of the Medical-Vocational Guidelines**

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[4] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

///

///

///

---

[4] Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Plaintiff argues that the ALJ's finding that plaintiff can stand and/or walk for only four hours in an eight-hour day precludes application of Grid rule 202.21, which considers the ability to perform light work requiring six hours of standing in an eight-hour day. See 20 C.F.R. § 404.1567(b); see also SSR 83-10. Apparently conceding the error, defendant argues that a four-hour stand/walk limitation nonetheless allows for sedentary work under the Grids. According to defendant, whether plaintiff can stand/walk for six hours, in which case she would capable of light work, or only four hours, in which case plaintiff could be capable of sedentary work, the ultimate disability remains the same.

The court agrees. The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056). Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to

///

///

///

properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly,

> in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

In this case, any error applying the Grids is harmless. As plaintiff argues and defendant appears to concede, the ALJ and Appeals Council erred by applying Grid rule 202.12 in determining that plaintiff's ability to perform light work precludes a finding of disabled because light work requires standing and/or walking for six hours in an eight-hour day. According to the ALJ, plaintiff is only capable of standing/walking no more than four hours in an eight-hour day. While the court agrees with plaintiff that the agency's analysis is flawed, the error is harmless because it is inconsequential to the ultimate disability determination. Specifically, even though Grid rule 202.12 is inapplicable because it described light work, plaintiff's stand/walk limitation nonetheless allows for sedentary work under the Grids. In either case, application of the Grids correctly directs a finding of not disabled.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 19) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 23) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 29, 2018

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE